**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. _2:08 cv 190_ |
| ) | |
| v. ) | |
| ) | |
| VALERO REFINING-TEXAS, L.P. ) | Judge _Hayden Head_ |
| ) | |
| Defendant. ) | |

# CONSENT DECREE

Plaintiff, the United States of America, on behalf of the United States Environmental

Protection Agency ("EPA"), has filed a Complaint in this action concurrently with this Consent

Decree against Defendant, Valero Refining-Texas, L.P. The Complaint alleges that Defendant is

civilly liable for violation of the Clean Water Act ("CWA" or "the Act"), 33 U.S.C. § 1251 et

seq., as amended by the Oil Pollution Act of 1990 ("OPA"), 33 U.S.C. § 2701 et seq. The

Complaint seeks civil penalties for the discharge of oil into navigable waters of the United States

from Defendant's Valero Refinery West Plant in Corpus Christi, Nueces County, Texas. At least

3,400 barrels (142,800 gallons) of oil were discharged into the Corpus Christi Ship Channel from

Defendant's containment berm located on the edge of the Ship Channel on June 1, 2006.

Defendant represents that it has removed the containment berm and its associated above-

ground storage tank from the former location on the edge of the Ship Channel to decrease the

likelihood of other such discharges from the refinery. Defendant does not admit and denies any

liability to the United States or wrongdoing arising out of the transactions or occurrences alleged

in the Complaint. Defendant further asserts that it has defenses in fact and law that would further preclude liability.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before taking testimony and without adjudication or admission of any issue of fact or law except as provided in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I. JURISDICTION AND VENUE

1.      This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Section 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. § 1321(b)(7)(E) and (n). The Court has personal jurisdiction over the Parties to this Consent Decree. Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1395 because the claim arose in this district and Defendant is located and doing business in this district. For purposes of this Decree, or any action to enforce this Decree, Defendant consents to the Court's jurisdiction over this Decree or such action and over Defendant, and consents to venue in this judicial district.

## II. APPLICABILITY

2.      The obligations of this Consent Decree apply to and are binding upon the United States and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

3.      Except as otherwise agreed to by the United States, no transfer of ownership or

2

operation of the Facility shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented.

4.      Defendant shall condition any contract to perform work under this Consent Decree upon performance of the work in conformity with the terms of this Consent Decree.

5.      In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III. DEFINITIONS

6.      Terms used in this Consent Decree that are defined in the CWA, or in regulations promulgated thereunder, shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "Complaint" shall mean the complaint filed by the United States in this action.

b.      "Consent Decree" or "Decree" shall mean this document.

c.      "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

d.      "Defendant" shall mean Valero Refining-Texas, L.P.

e.      "Discharge" shall mean the oil discharged on June 1, 2006 from the containment berm at the Valero Refinery West Plant into the Corpus Christi Ship Channel.

3

f.     "Effective Date" shall have the definition provided in Section XIII.

g.     "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

h.     "Facility" shall mean Valero's real property, equipment, facilities, or other infrastructure at the Valero Refinery West Plant in Corpus Christi, Texas.

i.     "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

j.     "Parties" shall mean the United States and Valero Refining-Texas, L.P.

k.     "Plaintiff" shall mean the United States.

l.     "Section" shall mean a portion of this Decree identified by a Roman numeral.

m.     "State" shall mean the State of Texas.

n.     "United States" shall mean the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

7.     Within thirty (30) Days after the Effective Date of this Consent Decree, Defendant shall pay the sum of one million six hundred and fifty thousand dollars ($1,650,000), plus interest, as a civil penalty. Interest shall accrue from the date on which this Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961, as of the date of lodging.

8.     Defendant shall pay the civil penalty due by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided to Defendant, following lodging of the Consent Decree, by the Financial Litigation Unit of the

4

U.S. Attorney's Office for the Southern District of Texas. Such monies are to be deposited in the Oil Spill Liability Trust Fund. The payment shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-09245 and shall specify that the payment is made toward CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).

9.      At the time of payment, Defendant shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-09245, to the United States in accordance with Section XII of this Decree (Notices) and to:

> Stephen C. Ewart
> National Pollution Funds Center
> 4200 Wilson Boulevard, Suite 1000
> Arlington, Virginia  22203-1804
>
> Commander
> United States Coast Guard
> Office of Claims and Litigation
> 2100 Second Street, S.W.
> Washington, D.C. 20593-0001

10.      Defendant shall not deduct or capitalize the civil penalty paid under this Section in calculating its federal income tax.

## V. SUPPLEMENTAL ENVIRONMENTAL PROJECT

11.      Defendant shall implement a Supplemental Environmental Project ("SEP") estimated at $300,000 in accordance with all provisions of this Section of the Consent Decree. The SEP shall involve the design and construction of an emergency response boat ramp near Public Oil Dock 11 at Avery Point on the Corpus Christi Ship Channel. The new boat ramp is

5

intended to provide an access point for larger emergency response boats to that area of the Ship Channel. Completion of this project will enhance emergency response efforts to protect human health and the environment on and along the water body that was affected by the spill. Prior to initiating construction, Defendant shall submit a design plan to EPA and the Port of Corpus Christi Authority for approval by the Port of Corpus Christi Authority. The project shall be completed in accordance with all applicable laws, regulations, and standards, including but not limited to any permit requirements and the local building code. The SEP shall be completed within eighteen (18) months after entry of this Consent Decree.

12.     Defendant is responsible for the satisfactory completion of the SEP in accordance with the requirements of this Consent Decree. Defendant may use the Port of Corpus Christi Authority, contractors, or consultants in planning and implementing the SEP.

13.     With regard to the SEP, Defendant certifies the truth and accuracy of each of the following:

a.     that Defendant in good faith estimates that the cost to implement the SEP is $300,000 based on information provided by the Port of Corpus Christi Authority and prior experience;

b.     that, as of the date of executing this Consent Decree, Defendant is not required to perform or develop the SEP by any federal, state, or local law or regulation and is not required to perform or develop the SEP by agreement, grant, or as injunctive relief awarded in any other action in any forum;

c.     that the SEP is not a project that Defendant was planning or intending to construct, perform, or implement other than in settlement of the claims resolved in this Decree;

6

   d. that Defendant has not received and will not receive credit for the SEP in any other enforcement action;

   e. that Defendant will not receive any reimbursement for any portion of the SEP from any other person; and

   f. that, for federal income tax purposes, Defendant has not, and will not, capitalize into inventory or basis nor deduct any costs or expenditures incurred in performing the SEP.

  14. <u>SEP Completion Report</u> – Within 30 days after the date set for completion of the SEP, Defendant shall submit a SEP Completion Report to the United States, in accordance with Section XII of this Consent Decree (Notices).  The SEP Completion Report shall contain the following information:

   a. a detailed description of the SEP as implemented;

   b. a description of any problems encountered in completing the SEP and the solutions thereto;

   c. an itemized list of all eligible SEP costs expended;

   d. certification that the SEP has been fully implemented pursuant to the provisions of this Decree; and

   e. a description of the environmental and public health benefits resulting from implementation of the SEP.

  15. EPA may, in its sole discretion, require information in addition to that described in the preceding Paragraph, in order to evaluate Defendant's completion report.

  16. After receiving the SEP Completion Report, the United States shall notify

Defendant whether or not Defendant has satisfactorily completed the SEP.  If Defendant has not completed the SEP in accordance with this Consent Decree, stipulated penalties may be assessed under Section VII of this Decree.

17.     Disputes concerning the satisfactory performance of the SEP and the amount of eligible SEP costs may be resolved under Section IX of this Consent Decree (Dispute Resolution).  No other disputes arising under this Section shall be subject to Dispute Resolution.

18.     Each submission required under this Section shall be signed by an official with knowledge of the SEP and shall bear the certification language set forth in Paragraph 22.

19.     Any public statement, oral or written, in print, film, or other media, made by Defendant making reference to the SEP under this Decree shall include the following language: "This project was undertaken in connection with the settlement of an enforcement action, United States v. Valero Refining-Texas, L.P., taken on behalf of the U.S. Environmental Protection Agency under the Clean Water Act."

20.     Where any compliance obligation under this Section requires Defendant to obtain a federal, state, or local permit or approval, Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals. Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

8

## VI. REPORTING REQUIREMENTS

21.     Defendant shall submit the following reports in accordance with Section XII (Notices) of this Decree:

a.     within six (6) months after the Effective Date, and every six (6) months thereafter until satisfaction of this Consent Decree, Defendant shall submit a letter report for the preceding six (6) months discussing Defendant's progress in satisfying its obligations in connection with the SEP under Section V of this Decree, including, at a minimum, a narrative description of activities undertaken, status of any construction, and a summary of costs incurred since the previous report; and

b.     a SEP Completion Report as described above in Section V.

22.     Each report submitted by Defendant under this Section shall be signed by an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted. Based on my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete. I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

23.     Defendant shall retain all underlying documents from which it has compiled any report or other submission required by this Consent Decree until at least three years after termination of this Decree.

24.     The reporting requirements of this Consent Decree do not relieve Defendant of any reporting obligations required by the CWA, or implementing regulations, or by any other federal, state, or local law, regulation, or requirement.

25.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

## VII.  STIPULATED PENALTIES

26.     If Defendant fails to pay the civil penalty and interest required under Section IV (Civil Penalty) when due, Defendant shall pay to the United States a stipulated penalty of fifteen hundred dollars ($1,500) per Day for each Day that the payment is late.  Late payment of the civil penalty shall be made in accordance with payment instructions in Section IV (Civil Penalty) above.  Stipulated penalties shall be paid in accordance with Paragraph 32, below.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree or for stipulated penalties for late payment of the civil penalty, as applicable.  Payments of stipulated penalties shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-09245 and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury.

27.     Defendant shall be liable for stipulated penalties to the United States for all other violations of this Consent Decree, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any reporting and SEP obligations under Sections V or VI, according to all applicable requirements of this Decree and within the specified time schedules established by or approved under this Decree.  The following stipulated penalties shall accrue per violation per Day for each violation of this Consent Decree:

| Penalty Per Violation Per Day: | Period of Delay: |
|---|---|
| $500 | 1st through 14th day |
| $1,000 | 15th through 30th day |
| $1,500 | 31st day and beyond |

28.    Stipulated penalties under this Section shall begin to accrue on the Day after performance is due and shall continue to accrue until performance is satisfactorily completed. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

29.    Defendant shall pay any stipulated penalty within thirty (30) Days of receiving a written demand.

30.    The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due under this Consent Decree.

31.    Stipulated penalties shall continue to accrue as provided in Paragraphs 26-27, above, during any Dispute Resolution, with interest on accrued penalties payable and calculated at the rate provided for in 28 U.S.C. § 1961, but need not be paid until the following:

a.    If the dispute is resolved by agreement or by a decision of the United States that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within thirty (30) Days of the effective date of that agreement or receipt of the United States' decision;

b.    If the dispute is submitted to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within sixty (60) Days of receiving the Court's decision or order, except as provided in subparagraph c, below;

11

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined to be owing, together with interest, within fifteen (15) Days of receiving the final appellate court decision.

32.     Defendant shall pay stipulated penalties owing to the United States in the manner set forth and with the confirmation notices required by Paragraphs 8-9, above, except that such monies can be paid by EFT or by certified or cashier's check in the amount due, payable to the U.S. Department of Justice for deposit in the U.S. Treasury, and that the transmittal letter shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

33.     Defendant shall not deduct stipulated penalties paid under this Section in calculating federal income tax.

34.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

35.     Subject to the provisions of Section X of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for Defendant's violation of this Consent Decree or applicable law.

## VIII. FORCE MAJEURE

36.     "Force majeure," for purposes of this Consent Decree, is defined as any event

12

arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the greatest extent possible. "Force majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

37.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission as soon as possible, but not later than seventy-two (72) hours after the time Defendant first knew that the event might cause a delay. Within seven (7) Days thereafter, Defendant shall provide in writing, as provided in Section XII of this Consent Decree (Notices), an explanation and description of the reasons for the delay, all actions taken or to be taken to prevent or minimize the delay, a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay, Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim, and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare, or the environment. Defendant shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of force majeure for that event for the period of

13

time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

38.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. The United States will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

39.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify Defendant in writing of its decision.

40.     If Defendant elects to invoke the dispute resolution procedures set forth in Section IX of this Consent Decree, it shall do so no later than fifteen (15) Days after receipt of the United States' notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of this Section. If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected

14

obligation of this Consent Decree.

## IX.  DISPUTE RESOLUTION

41.     Unless otherwise expressly provided for in this Consent Decree, the dispute

resolution procedures of this Section shall be the exclusive mechanism to resolve disputes

arising under or with respect to this Consent Decree.  Such procedures, however, shall not apply

to actions by the United States to enforce obligations of Defendant under this Consent Decree

that have not been disputed in accordance with this Section.

42.     Any dispute subject to dispute resolution under this Consent Decree shall first be

the subject of informal negotiations between the United States and Defendant.  The dispute shall

be considered to have arisen when Defendant sends a written Notice of Dispute, as provided in

Section XII of this Decree (Notices).  Such Notice of Dispute shall state clearly the matter in

dispute.  The period of informal negotiations shall not exceed twenty (20) Days from the date the

dispute arises, unless that period is modified by written agreement.  If informal negotiations are

unsuccessful, then the position advanced by the United States shall be considered binding unless,

within twenty (20) Days after the conclusion of the informal negotiation period, Defendant

invokes formal dispute resolution procedures as set forth below.

43.     Defendant shall invoke formal dispute resolution procedures, within the time

period provided in the preceding Paragraph, by serving on the United States a written Statement

of Position regarding the matter in dispute.  The Statement of Position shall include, but need not

be limited to, any factual data, analysis, or opinion supporting Defendant's position and any

supporting documentation relied upon by Defendant.

44.     The United States shall serve its Statement of Position within forty-five (45) Days

15

of receipt of Defendant's Statement of Position. The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

45.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XII (Notices) of this Consent Decree, a motion requesting judicial resolution of the dispute. The motion must be filed within thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph. The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

46.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court. Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

47.     Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 43, Defendant shall bear the burden of demonstrating that its position complies with this Decree and that it is entitled to relief under applicable principles of law.

48.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides. Stipulated penalties with

16

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 31. If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X. <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

49.     This Consent Decree resolves the civil penalty claim of the United States and any civil claim for injunctive relief by the United States for the violation alleged in the Complaint filed in this action through the date of lodging.

50.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in the preceding Paragraph. This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the CWA or implementing regulations, or under other federal laws, regulations, or permit conditions, except as expressly specified in the preceding Paragraph.

51.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, response or removal costs, natural resource damages, criminal liability, or other appropriate relief relating to the Facility or Defendant's violation, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 49 of this Section.

52.     This Consent Decree is not a permit, or a modification of any permit, under any

17

federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, orders, and permits.  Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to said laws, regulations, orders, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA or with any other provisions of federal, State, or local laws, regulations, orders, or permits.

53.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties that are not party to this Consent Decree, nor does it limit the rights of third parties that are not party to this Consent Decree against Defendant, except as otherwise provided by law.

54.     Defendant hereby covenants not to sue and agrees not to assert any claims related to the Discharge, or response activities in connection with the Discharge, against the United States pursuant to the CWA, OPA, or any other federal law, State law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, or pursuant to any other provision of law.  Except as otherwise provided in this Consent Decree (e.g., Paragraphs 1, 5, 51, 67), nothing in this Paragraph affects Defendant's ability to assert defenses, if any, in any subsequent proceedings or against any party other than the United States.

55.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

18

## XI. **COSTS**

56.     The Parties shall bear their own costs of this action, including attorneys' fees,

except the United States shall be entitled to collect costs (including attorneys' fees) incurred in

any action necessary to enforce this Consent Decree.

## XII. **NOTICES**

57.     Unless otherwise specified herein, whenever notifications, submissions, reports or

communications are required by this Consent Decree, they shall be made in writing and

addressed to all parties as follows:

As to the United States:

      As to the U.S. Department of Justice:
           Chief (re: DJ # 90-5-1-1-09245)
           Environmental Enforcement Section
           Environment and Natural Resources Division
           U.S. Department of Justice
           P.O. Box 7611
           Washington, D.C.  20044-7611
           (202) 514-0097 (facsimile)

      As to EPA Region 6:
           OPA Enforcement Coordinator
           U.S. Environmental Protection Agency, Region 6
           1445 Ross Avenue, Suite 1200, 6SF-PC
           Dallas, Texas  75202-2733
           (214) 665-7447 (facsimile)

           Amy Salinas
           Assistant Regional Counsel
           U.S. Environmental Protection Agency, Region 6
           1445 Ross Avenue, Suite 1200, 6RC-S
           Dallas, Texas  75202-2733
           (214) 665-6460 (facsimile)
           salinas.amy@epa.gov

19

As to Defendant:

> Richard J. Walsh
> Assistant General Counsel and Vice President
> Valero
> One Valero Way
> San Antonio, Texas 78249-1616
> (210) 345-2604 (telephone)
> (210) 353-8363 (facsimile)
> richard.walsh@valero.com

58.    Any Party may, by written notice to the other Party, change its designated notice recipient or notice address provided above.

59.    Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIII. **EFFECTIVE DATE**

60.    The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XIV. **RETENTION OF JURISDICTION**

61.    The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Decree or entering orders modifying this Decree, pursuant to Sections IX (Dispute Resolution) and XV (Modification), or effectuating or enforcing compliance with the terms of this Decree.

## XV. **MODIFICATION**

62.    The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all the Parties. Where the modification constitutes a material change to any

20

term of this Decree, it shall be effective only upon approval by the Court.

63.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX of this Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 47, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rules of Civil Procedure 60(b).

## XVI. TERMINATION

64.     After Defendant has completed performance of its obligations required by this Consent Decree, including payment under Section IV (Civil Penalty) of this Decree and any accrued stipulated penalties under Section VI, performance of the Supplemental Environmental Project under Section V, and Reporting under Section VI, Defendant may serve upon the United States a written Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

65.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the United States shall file, for the Court's approval, a joint stipulation terminating the Decree.

66.     If the United States does not agree that the Consent Decree may be terminated, the Defendant may invoke Dispute Resolution under Section IX of this Decree.  Defendant, however, shall not seek Dispute Resolution of any dispute until ninety (90) Days after service of

21

its Request for Termination.

## XVII. **PUBLIC PARTICIPATION**

67.     This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate. Defendant agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Decree.  Defendant consents to entry of this Consent Decree without further notice.

## XVIII. **SIGNATORIES/SERVICE**

68.     The Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, on behalf of the United States and the undersigned representative of Defendant certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

69.     This Consent Decree may be signed in counterparts, and such counterpart signature pages shall be given full force and effect.

70.     Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XIX. **INTEGRATION**

71.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XX. **FINAL JUDGMENT**

72.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

This Consent Decree is dated and entered this _7_ day of _Aug_ , 2008.

**UNITED STATES DISTRICT JUDGE**
**Southern District of Texas**

23

Signature Page to Consent Decree in <u>US v. Valero Refining-Texas, L.P.</u>

**FOR PLAINTIFF UNITED STATES OF AMERICA:**

RONALD J. TENPAS
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division

JASON T. BARBEAU
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, D.C. 20044

24

Signature Page to Consent Decree in <u>US v. Valero Refining-Texas, L.P.</u>

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

DONALD J. DeGABRIELLE, JR.
United States Attorney

CHARLES WENDLANDT
Assistant United States Attorney
United States Attorney's Office
Southern District of Texas
800 N. Shoreline Blvd., Suite 500
Corpus Christi, TX 78401

25

Signature Page to Consent Decree in US v. Valero Refining-Texas, L.P.

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

RICHARD E. GREENE
Regional Administrator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

AMY SALINAS
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

26

Signature Page to Consent Decree in <u>US v. Valero Refining-Texas, L.P.</u>

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

GRANTA Y. NAKAYAMA
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
Ariel Rios Building, 2201A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

KELLY K. BRANTNER
Office of Civil Enforcement
Water Enforcement Division
U.S. Environmental Protection Agency
Mail Code 2243A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460

27

**Signature Page to Consent Decree in <u>US v. Valero Refining-Texas, L.P.</u>**

**FOR DEFENDANT:**


**VALERO REFINING-TEXAS, L.P.**

By: _____
      Dennis Payne
      Vice President Regional Refining
      Valero Refining-Texas, L.P.
      One Valero Way
      San Antonio, Texas 78249-1616

28